UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ELTON MASON, an individual, dba
WASHINGTON STATE TRUCKING,
a sole proprietorship,

            Plaintiff,

   v.

WASHINGTON STATE, a state
governmental entity, WASHINGTON
STATE DEPARTMENT OF
TRANSPORTATION, a political
subdivision governmental entity; LYNN
PETERSON, in her official and individual
capacities, LINEA LAIRD, in her official
and individual capacities, OFFICE OF
MINORITY WOMEN BUSINESS
ENTERPRISES, a subdivision
governmental entity, SEATTLE TUNNEL
PARTNERS, a Joint Venture Dragados,
U.S.A., Tutor Perini Corporation, CHRIS
DIXON, in his official and individual
capacities, and RUSSELL
STREADBECK in his official and
individual capacities,

            Defendants.

C17-186 TSZ

ORDER

      THIS MATTER comes before the Court on defendants Seattle Tunnel Partners

("STP"), Chris Dixon, and Russell Streadbeck's (collectively the "STP Defendants")

motion to dismiss, docket no. 21, and defendants Washington State, Washington State

Department of Transportation ("WSDOT"), the Office of Minority Women Business

Enterprises ("OMWBE"), Lynn Peterson, and Linea Laird's (collectively, the "State Defendants") joinder in the STP Defendants' motion to dismiss,[1] docket no. 23. Having reviewed the motion and all relevant filings, the Court enters the following Order.

**<u>Background</u>**

The following facts are set forth as alleged in the Complaint and the exhibits attached thereto.

**A. The Parties**

Plaintiff Elton Mason is an African American male and the sole owner and proprietor of Washington State Trucking ("WST"), a construction company specializing in trucking and excavation services and certified as a Disadvantaged Business Enterprise ("DBE"). Complaint, docket no. 1, ¶¶ 3.1 – 3.2. Defendant WSDOT is a state entity and political subdivision of the State of Washington responsible for overseeing highway construction projects. *Id.* at ¶ 3.6. Defendant Lynn Peterson is the Secretary of WSDOT and defendant Linea Laird is the Construction Division Head and Chief Engineer. *Id.* at ¶ 3.7 – 3.8. Defendant OMWBE is local state entity tasked with certifying small businesses owned and controlled by minorities, women, and other socially or economically disadvantaged individuals as DBEs. *Id.* at ¶ 3.9. Defendant STP is the

---

[1] Plaintiff argues that the Court should strike or deny the State Defendants' joinder in STP's motion to dismiss because they have already filed an answer to plaintiff's complaint, docket no. 19. The Court declines to do so. Although the State Defendant's joinder in the STP Defendant's 12(b)(6) motion to dismiss should have been titled as a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), the applicable standards are functionally identical, *see Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989), and thus, the State Defendants' arguments that plaintiff has failed to state a claim for relief are applicable regardless of the title of the State Defendants' motion. Accordingly, the Court construes the State Defendants' joinder in the STP Defendants' motion as a motion for judgment on the pleadings under Rule 12(c).

Design-Build contractor for the Alaskan Way Viaduct project. *Id.* at ¶ 3.10. STP is a joint-venture between Dragados U.S.A. and Tutor Perini Corporation. *Id.* Defendant Chris Dixon is the Project Manager of STP in Seattle, Washington and defendant Russell Streadbeck is STP's Commercial Manager. *Id.* at 3.11 – 3.12.

**B. The Alaskan Way Viaduct Project**

The Alaskan Way Viaduct project is a federally funded project to build a new State Route 99 corridor through Seattle. Complaint, docket no. 1, Ex. 1 at 6. WSDOT is the owner of the project, *id.*, and STP was the contractor awarded the work, Complaint, ¶ 3.10.

The prime contract for the Alaskan Way Viaduct project establishes a DBE goal of 8% of the compensation payable to the Design-Builder. Complaint, ¶¶ 1.12, 4.45. Because the project involves large amounts of excavation and dirt removal, STP decided it would achieve a portion of the DBE goal through hauling services. Complaint, ¶ 4.47. Through a request for proposal process, STP selected Grady Excavating, Inc. ("Grady Excavating"), a female-owned, certified DBE construction firm which had submitted the lowest bid to perform the hauling work. Complaint, Ex. 1 at ECF p. 12. On July 6, 2012, Grady Excavating was decertified as a DBE. Complaint, ¶ 4.50. After learning of Grady Excavating's decertification, STP began a new request for proposal process that imposed additional requirements on bidders that were more burdensome than those imposed during the initial request for proposal, including requiring firms to own at least twenty trucks and to disclose certain personal and business financial information. Complaint, ¶¶ 4.52, 4.54.

On August 12, 2012, STP met with several of the bidding firms to inform them that none of the bids had been successful and that STP intended to continue using Grady Excavating to perform the trucking work despite its decertification. Complaint, Ex. 1 at 14. OMA Construction, one of the certified DBEs in attendance at that meeting, began discussions with STP about why its bid had not been accepted given that it was the lowest bidder among the firms seeking to replace Grady Excavating. *Id.* After OMA agreed to lower its bid further, STP ultimately awarded OMA Construction the contract to replace Grady Excavating. *Id.*

**C. The Federal Highway Administration's Investigation**

On August 20, 2012, plaintiff filed a complaint with the Federal Highway Administration alleging that STP failed to use adequate good faith efforts to find another DBE to substitute for Grady Excavating and that WSDOT failed to oversee and adequately monitor STP's efforts to achieve the 8% DBE goal. Complaint, Ex. 1 at 7. On November 1, 2013, the Federal Highway Administration issued its report concluding that the procedures STP followed in replacing Grady Excavating did not conform to "good faith efforts requirements" and that WSDOT failed to oversee and adequately monitor STP's efforts to achieve the DBE goal. *Id.* at 17, 24.

On January 13, 2014, as a result of STP's failures to put forth good faith efforts to meet the prime contract's DBE goal, WSDOT found that STP was in "breach of contract with WSDOT." Complaint, ¶ 5.7. Sometime thereafter, WSDOT "lifted the breach from Defendant STP." *Id.* at ¶ 5.8. On March 20, 2014, the Federal Highway Administration and WSDOT entered into a Conciliation Agreement addressing the findings in the

Highway Administration's report.  Complaint, Ex. 3 at 3.[2]  Under the terms of the

Conciliation Agreement, WSDOT agreed to undertake more intensive oversight of STP's

efforts to meet the 8% DBE goal and to provide regular monthly progress reports to the

Federal Highway Administration; hire a DBE Program Administrator and a DBE

Program Coordinator; and take all appropriate actions against STP in the event the

company failed to resolve the DBE compliance issues identified in the Highway

Administration's report.  *Id.* at 6-8.

Plaintiff filed the instant lawsuit on February 7, 2017, alleging eleven separate

causes of action under both State and Federal law relating to various aspects of the

Alaskan Way Viaduct project.

**Discussion**

**A.  Legal Standard**

Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not

provide detailed factual allegations, it must offer "more than labels and conclusions" and

contain more than a "formulaic recitation of the elements of a cause of action."  *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The complaint must indicate more than

mere speculation of a right to relief.  *Id.*  A complaint may be lacking for one of two

reasons:  (1) the absence of a cognizable legal theory, or (2) insufficient facts under a

cognizable legal claim.  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th

Cir. 1984).  In ruling on a motion to dismiss, the Court must assume the truth of the

---

[2] Plaintiff alleges that the Conciliation Agreement was between WSDOT and STP, but the content of the agreement makes clear that STP was not a party to the conciliation agreement between the Federal Highway Administration and WSDOT.  Complaint, Ex. 3

plaintiff's allegations and draw all reasonable inferences in the plaintiff's favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the Court need not accept as true allegations which contradict documents that are referenced in the complaint or that are properly subject to judicial notice. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). The question for the Court is whether plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The inquiry in a motion under Rule 12(c) is "functionally identical" to a motion made under Rule 12(b)(6). *See Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

### B. Plaintiff's Claims

The Court notes at the outset, that plaintiff's forty-one page complaint is ambiguously pleaded, making it exceedingly difficult to determine which factual allegations relate to which of plaintiff's eleven causes of action. The Court has made its best effort to make sense of plaintiff's allegations and to address them in the context of the claims to which they relate.

### 1. First Cause of Action - Title VI Discrimination, 42 U.S.C. § 2000d (Against STP, Washington State, WSDOT, and OMWBE)

42 U.S.C. § 2000d provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. A private individual may sue to enforce Title VI only in instances of intentional discrimination. *Gamble v. Pac. Nw.*

*Reg'l Council of Carpenters*, No. C14-455 RSM, 2015 WL 3442561, at *5 (W.D. Wash. May 28, 2015) (citing *Alexander v. Sandoval*, 532 U.S. 275, 281 (2001)).

Plaintiff's complaint appears to base his Title VI discrimination claim on allegations that he was the victim of intentional racial discrimination when: (1) STP initially awarded a contract to Grady Excavating, Inc., a female-owned, certified DBE construction firm, (the "Initial Contract") Complaint, ¶ 4.48[3]; and (2) STP imposed a burdensome request for proposal process and ultimately selected OMA Construction, another minority-owned DBE, to assume the remainder of Grady Excavating's work on the project, (the "Replacement Contract") *id.* at ¶ 4.52. Although the Complaint indicates that plaintiff's discrimination claim is against defendants STP, Washington State, WSDOT and OMWBE, plaintiff's opposition concedes that his Title VI discrimination claim relates only to "STP's failure to award [him] contracts" because he is an African American. Pl.'s Opp'n, docket no. 26 at 7-8.

Plaintiff's allegations that STP discriminated against him with regard to the Initial and Replacement Contracts are untimely. Claims under § 2000d are subject to Washington's three-year statute of limitations for personal injury actions. *See Taylor v. Regents of Univ. of Cal.*, 993 F.2d 710, 711-12 (9th Cir. 1993) (holding that the state statute of limitations for personal injury actions apply to § 2000d claims); *see also* RCW 4.16.080(2) (action for "injury to the person" subject to a three year statute of limitations). Although state law determines the length of the limitations period for a civil

---

[3] Although the Complaint does not allege when STP awarded Grady Excavating the trucking work, it is clear from plaintiff's allegations that it occurred sometime before July 2012 when Grady Excavating was decertified as a DBE. *See* Complaint, ¶¶ 4.48 – 4.51.

rights claim, federal law determines when the claim accrues. *See Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001). Under federal law, a claim accrues when the plaintiff "knows or has reason to know of the injury which is the basis of the action." *TwoRivers v. Lewis*, 174 F.3d 987, 991-92 (9th Cir. 1999).

Here, although plaintiff was clearly aware of the injury that forms the basis of his allegations against STP by at least August 20, 2012, when he filed his complaint with the Federal Highway Administration, *see* Complaint, Ex. 1 at 7, plaintiff did not file this lawsuit until February 7, 2017, well outside the applicable three-year limitations period. Plaintiff acknowledges that his allegations of discrimination took place outside the limitations period, but argues nonetheless that his claim is timely because defendants' actions were "continuing violations."[4]

"To establish a continuing violation a plaintiff must show a series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the limitations period." *Green v. Los Angeles County Superintendent of Schools*, 883 F.2d 1472, 1480 (9th Cir. 1989). Plaintiff relies on the Federal Highway Administration's November 1, 2013, report, Complaint, Ex. 1, and the numerous complaints plaintiff filed with various State and Federal agencies, *id.* at ¶ 5.4, to support his invocation of the continuing violations doctrine. As the STP Defendants correctly point out, however, even taking inferences in

---

[4] Plaintiff cites no authority for the proposition that the continuing violation doctrine applies to claims under 42 U.S.C. § 2000d. For the purposes of this motion, however, the Court assumes, without deciding, that the continuing violation doctrine does apply to such claims.

plaintiff's favor, neither the Federal Highway Administration's report,[5] nor the mere fact

that plaintiff filed complaints with State and Federal agencies, substantiate his purely

conclusory allegations of ongoing discrimination during the limitations period.

Moreover, plaintiff's allegations regarding STP's refusals to award the Initial and

Replacement Contracts to plaintiff constitute discrete acts of discrimination to which the

continuing violations doctrine does not apply. *See National R.R. Passenger Corp. v.*

*Morgan*, 536 U.S. 101, 114 (2002) (holding that discrete discriminatory acts are not

actionable if time barred, even when they are related to acts that are timely alleged); *see*

*also Chinoy v. Pennsylvania State University*, No. 11-CV-01263, 2012 WL 727965, at *5

(M.D. Pa. March 6, 2012). Plaintiff's allegations that STP violated § 2000d in

connection with the Initial and Replacement Contracts are therefore time-barred.

Because plaintiff's allegations against STP are time barred, and in light of plaintiff's

concession that his Title VI discrimination claim relates only to STP's conduct, plaintiff's

first cause of action for Title VI discrimination is DISMISSED with prejudice.

### 2. Second Cause of Action, Title VI Retaliation, 42 U.S.C. § 2000d (Against STP, Washington State, WSDOT, and OMWBE)

A claim for retaliation under 42 U.S.C. § 2000d requires a plaintiff to allege facts

sufficient to show: (1) the plaintiff engaged in protected activity of which the defendant

was aware; (2) the defendant took a material adverse action against the plaintiff; and (3) a

causal connection exists between the plaintiff's protected activity and the defendant's

---

[5] The Highway Administration's report relates only to conduct that occurred outside the limitations period and, contrary to plaintiff's representations, does not find that STP intentionally discriminated against him. *See* Complaint, Ex. 1.

adverse action. *See Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000) (reciting the elements of a Title VII retaliation claim); *Peters v. Jenny*, 327 F3.d 307, 320 (4th Cir. 2003) (applying the elements of a Title VII retaliation claim to a Title VI claim). An adverse action is one that would deter a reasonable person from bringing or supporting a charge of discrimination. *Ray*, 217 F.3d at 1242-43.

Plaintiff alleges that he was subject to retaliation for filing complaints with various State and Federal agencies. Specifically, plaintiff appears to base his retaliation claim on three allegations: (1) that STP retaliated against plaintiff by creating a burdensome request for proposal for replacing Grady Excavating and ultimately awarding the Replacement Contract to OMA Construction, Complaint, ¶¶ 4.51, 4.52; (2) that WSDOT retaliated against plaintiff by removing STP from the breach of contract status issued by WSDOT, Complaint, ¶ 5.8; and (3) that STP retaliated against plaintiff when it negotiated for a waiver of any claims plaintiff might assert against STP in a subsequent contract awarded to plaintiff, Complaint, ¶ 5.9.[6]

Plaintiff's allegation that STP retaliated against plaintiff in connection with the Replacement Contract is time barred for the same reasons set forth with respect to his Title VI discrimination claim. As noted above, in Washington, claims under 42 U.S.C. § 2000d have a three year statute of limitations, *see Taylor*, 993 F.2d at 711-12; *see also* RCW 4.16.080(2), and although plaintiff was aware of the facts giving rise to this portion of his retaliation claim by at least August 20, 2012, he did not file this lawsuit until February 7, 2017.

---

[6] Plaintiff does not allege any specific retaliatory conduct undertaken by Washington State or OMWBE.

Plaintiff's allegations that he was subjected to retaliation when STP negotiated for the waiver provision and when WSDOT lifted the "breach" imposed on STP fail to state a claim for relief. Plaintiff's complaint fails to allege facts showing a causal connection between plaintiff's protected activity and WSDOT's decision to remove STP from "breach" of a contract to which plaintiff is not a party. Similarly, the complaint is devoid of factual allegations from which the Court could plausibly infer that STP's negotiation of the waiver provision would deter a reasonable person from bringing or supporting a charge of discrimination when STP ultimately agreed to strike the waiver from the contract. Accordingly, plaintiff's Title VI retaliation claim is DISMISSED without prejudice.

### 3. Third Cause of Action, Violation of 42 U.S.C. § 1981(a) (Against all Defendants)

42 U.S.C. § 1981(a) provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). In the context of public bidding, a plaintiff may state a valid cause of action under § 1981(a) by alleging facts sufficient to show (1) his business is a minority owned firm; (2) that his bid met the specifications required for the contract; (3) that his bid was "significantly more advantageous" than the bid that won the contract; and (4) the contractor ultimately selected another bid.[7] *T & S Serv. Assoc., Inc. v. Crenson*, 666 F.2d 722, 725 (1st Cir.

---

[7] The Eleventh Circuit requires a slightly different showing: (1) that plaintiff is a member of a minority group; (2) that he submitted an application or bid meeting the requirements for an available contract; (3)

1981).  Plaintiff alleges only two identifiable violations of § 1981:  (1) in August 2015, STP awarded a contract to OMA Construction, another certified DBE, even though plaintiff provided the "best value" for the services, Complaint, ¶ 5.13; and (2) in October of 2016, STP awarded OMA Construction another contract without giving plaintiff "an opportunity to address his bids," Complaint, ¶ 5.14.

Plaintiff's allegations concerning these purported violations of § 1981 are far too vague and conclusory to state a plausible claim for relief.  The complaint fails to allege any specific conduct undertaken by defendants Peterson, Laird, Dixon, or Streadbeck in connection with plaintiff's § 1981 claim, other than to allege that they acted with "malice."  Complaint, ¶ 5.15.  With respect to Washington State, WSDOT, and OMBWE, plaintiff offers only the entirely conclusory allegation that they used the official policies of the State to implement their abuse of plaintiff's constitutional rights.  *Id.*  And finally, as to STP, plaintiff has failed to allege facts from which the Court could plausibly infer that his bid met the specifications required for the contracts at the heart of his § 1981 claim or that his bid on those contracts was "significantly more advantageous."  Plaintiff simply concludes, without factual support, that his bid was the "best value."  Complaint, ¶ 5.13.  However, such threadbare recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice to survive a

the application or bid was ultimately rejected; and (4) the contract was eventually given to an individual who was not a member of a protected class.  *Brown v. Am. Honda Motor Co.*, 939 F.2d 946, 949 (11th Cir. 1991).  The Ninth Circuit does not appear to have decided this issue, but regardless of which standard applies, as discussed below, plaintiff has failed to allege that his bid met the requirements for the contracts.

motion to dismiss.  *See Iqbal*, 556 U.S. at 678.  Accordingly, plaintiff's § 1981 claim is DISMISSED without prejudice.

**4. Fourth Cause of Action — Violation of 42 U.S.C. § 1983 (Against Defendants Peterson and Laird)**

42 U.S.C. § 1983 provides, in pertinent part, that "[e]very person who, under color of any statute of any State . . . subjects, or cause to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983.  Plaintiff bases his § 1983 claim on non-specific allegations that defendants Peterson and Laird deprived him of his rights under the First and Fourteenth Amendments.  *See* Complaint, ¶¶ 5.17, 5.20.  However, in order for a person acting under color of state law to be liable under § 1983, there must be a showing of personal participation in the alleged rights deprivation.  *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  Here, plaintiff's complaint fails to identify the conduct allegedly undertaken by defendants Peterson and Laird that deprived him of his constitutional rights.  Consequently, plaintiff's § 1983 claim is DISMISSED without prejudice.

**5. Fifth Cause of Action —Violation of 42 U.S.C. § 1985(3) (Against all Defendants)**

To state an actionable claim under 42 U.S.C. § 1985(3), a plaintiff must allege four elements: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy;

(4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992). Other than simply concluding that he has "alleged sufficient facts in [his] Complaint," plaintiff has entirely failed to respond to the arguments raised by defendants seeking dismissal of his § 1985 claim and the Court construes this failure as an admission that the defendants' arguments have merit. *See Rice v. Providence Reg'l Med. Ctr. Everett*, No. 09-482 RSM, 2009 WL 2342449, at *3 (W.D. Wash. July 28, 2009) ("Plaintiff's failure to respond to these portions of Defendant's brief is an admission that those arguments have merit."); Local Civil Rule 7(b)(2). In addition, plaintiff's allegation that defendants conspired to deprive him of equal protection of the laws is entirely conclusory and without factual support, *see* Complaint, ¶¶ 5.22-5.23, and is therefore insufficient to withstand a motion to dismiss. *See Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 626 (9th Cir. 1988) ("A mere allegation of conspiracy without factual specificity is insufficient."). Accordingly, plaintiff's § 1985 claim is DISMISSED without prejudice.

**6. Sixth Cause of Action — Breach of Contract and Good Faith and Fair Dealing (Against Defendants STP and WSDOT)**

Plaintiff's breach of contract claim alleges that STP breached its contract with WSDOT by making only *pro forma*, rather than good faith, efforts to comply with the contract's 8% DBE goal. Complaint, ¶¶ 5.27 – 5.29. Under Washington law, a claim for breach of contract requires a plaintiff to allege: (1) the existence of a valid contract; (2) breach of that contract; and (3) damages resulting from the breach. *See Karpenski v. American General Life Companies*, LLC, 999 F. Supp. 2d 1235, 1250 (W.D. Wash.

2014).  In every Washington contract there is an implied duty of good faith and fair

dealing which obligates the parties to the contract to cooperate with each other so that

each may obtain the full benefit of performance.  *See Badgett v. Sec. State* Bank, 116

Wn.2d 563, 569 (1991).  The duty of good faith and fair dealing requires only that the

parties perform in good faith the obligations imposed by the agreement.  *Id.*  If there is no

contractual duty owed, there is nothing that must be performed in good faith.  *Johnson v.*

*Yousoofian*, 84 Wn. App. 755, 762 (1996).

Generally, only the parties to a contract can sue to enforce the contract's terms.

*Lobak Partitions, Inc. v. Atlas Constr. Co.*, 50 Wn. App. 493, 497 (1988).  A third party

*can* maintain an action for breach of duties imposed by a contract, however, where the

parties intended the promisor to assume a direct obligation to the third party at the time

they entered into the contract.  *Lonsdale v. Chesterfield*, 99 Wn.2d 353, 360-61 (1983).

Plaintiff's opposition argues, without citation to any authority, that he is a third-

party beneficiary to the contract between STP and WSDOT.  However, plaintiff's

complaint fails to allege any facts from which the Court could reasonably infer that STP

and WSDOT intended to provide a direct benefit to plaintiff when they entered into the

contract to complete the Alaskan Way Viaduct project.  The fact that the 8% DBE goal

*might* have benefited plaintiff as a DBE is, at most, an incidental, contingent benefit

insufficient to render him a third-party beneficiary.  *See Lonsdale*, 99 Wn.2d at 362

(noting that to be a third party beneficiary, the terms of the contract must necessarily

require the promisor to confer a benefit upon a third person).  Plaintiff's sixth cause of

action is DISMISSED without prejudice.

### 7. Seventh Cause of Action — Defamation (Against Defendants STP, Dixon, and Streadbeck)

A claim of defamation requires a plaintiff to allege four elements: (1) the statement was false; (2) it was not privileged; (3) the defendant was at fault; and (4) the statement proximately caused damages. *Mark v. Seattle Times*, 96 Wn.2d 473, 486 (1981). As with plaintiff's claim under § 1985(3), plaintiff has failed entirely to respond to the STP Defendants' arguments in support of dismissal and the Court construes this failure as an admission that the arguments have merit. *See Rice*, 2009 WL 2342449, at *3.

In addition, plaintiff's allegations of defamation fall short of alleging a plausible claim for relief. Plaintiff alleges that the STP Defendants defamed plaintiff when they told WSDOT officials that plaintiff used trucks he neither leased nor owned and spread rumors that plaintiff scratched out VIN numbers on his trucks to hinder verification of their ownership. Complaint, ¶¶ 5.31 – 5.32. Plaintiff appears to allege that these statements caused plaintiff damage in the form of unspecified lost contracts and injury to his reputation. *Id.* at ¶¶ 5.32 – 5.33, 5.35 & 5.37. However, plaintiff fails to allege facts supporting his alleged injury to reputation, does not identify any specific contracts lost as a result of these statements, and draws no nexus between the alleged statements and any damage allegedly caused. Plaintiff's seventh cause of action for defamation is DISMISSED without prejudice.

### 8. Eighth Cause of Action — Blacklisting (Against all Defendants)

Under Washington law, a civil claim for blacklisting requires a plaintiff to allege facts sufficient to show that the defendant "willfully and maliciously" sought to influence

a potential employer for the purpose of preventing the plaintiff from obtaining employment. *Moore v. Commercial Aircraft Interiors,* LLC, 168 Wn. App. 502, 510 (2012). A plaintiff must, at a minimum, allege specific facts showing that a defendant published the statement "*for the purpose of preventing plaintiff from securing employment.*" *Banks v. Yoke's Foods, Inc.*, No. 14-CV-319, 2014 WL 7177856, at *8 (E.D. Wash. Dec. 16, 2014) (emphasis in original). Plaintiff has again failed to respond to defendants arguments in support of dismissal and the Court construes this failure as an admission that the arguments have merit. *See Rice*, 2009 WL 2342449, at *3.

In support of his blacklisting claim, plaintiff alleges that William Miller, an employee of Dragados U.S.A. "stated in front of WSDOT employees that plaintiff Elton Mason 'will never get a job on this project (Seattle Tunnel Project).'" Complaint, ¶ 5.45. However, plaintiff fails to allege facts sufficient to show that Mr. Miller's statement sought to influence a potential employer for the purpose of preventing plaintiff from obtaining employment.[8] Plaintiff's complaint does not identify any specific contracts he was allegedly denied as a result of this statement and in fact, his contention that the statement was made for the purpose of preventing him from obtaining employment is flatly contradicted by STP's decision to award him an $180,000 contract for work on the Alaskan Way Viaduct project. *See* Complaint, ¶ 1.22. Plaintiff's blacklisting claim, as alleged, fails to raise a plausible, non-speculative right to relief and accordingly, plaintiff's eighth cause of action is DISMISSED without prejudice.

---

[8] Plaintiff does not allege any facts showing that the State Defendants engaged in conduct that sought to influence a potential employer for the purpose of preventing plaintiff from obtaining employment.

### 9. Ninth Cause of Action — Tortious Interference with Business Expectancy (Against all Defendants)[9]

A claim for tortious interference requires a plaintiff to allege facts sufficient to show: (1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship or expectancy; (3) intentional interference inducing or causing breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage. *Leingang v. Pierce Cnty. Med. Bureau, Inc.*, 131 Wn.2d 133, 157 (1997).

Here, plaintiff alleges, in conclusory fashion, that he had unspecified business relationships or expectancies with WSDOT and STP, and that WSDOT and STP interfered with those relationships or expectancies in an unspecified manner. Complaint, ¶¶ 5.45 - 5.50. However, such threadbare recitals of the elements of a tortious interference claim without any factual support are insufficient to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678; *see also Graham v. Cingular Wireless LLC*, No. C05-1810, 2006 WL 354969, at *2 (W.D. Wash., Feb. 14, 2006). Moreover, plaintiff's tortious interference claim does not contain allegations that defendants Washington State, OMWBE, Peterson, Laird, Dixon, or Streadbeck, had knowledge of or interfered with any business expectancy or relationship. Accordingly, plaintiff's ninth cause of action for tortious interference is DISMISSED without prejudice.

---

[9] Plaintiff has titled its ninth cause of action "Economic Interference with Business Relationships." The Court construes this claim as asserting a cause of action for tortious interference.

**10. Tenth Cause of Action — Violation of the Washington Consumer Protection Act (Against defendants STP, Dixon, Streadbeck, Peterson and Laird)**

Under Washington law, a claim for violation of the Consumer Protection Act ("CPA") requires a plaintiff to allege: (1) an unfair or deceptive act or practice; (2) occurring in the conduct of trade or commerce; (3) with an impact on the public interest; (4) that injured the plaintiff in her business or property; and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Ins. Co.*, 105 Wn.2d 778, 780 (1986).

Plaintiff's CPA claim appears to be based on his allegations that STP awarded Grady Excavating contracts despite its knowledge that Grady Excavating was not actually an economically disadvantaged business.[10]  Complaint, ¶ 5.61.  The only specific contract the complaint alleges was awarded to Grady Excavating was the Initial Contract for hauling and disposal work, Complaint, ¶ 4.48.  Plaintiff's CPA claim with respect to this contract, however, is barred by the statute of limitations.

A claim under the CPA is barred unless commenced "within four years after the cause of action accrues."  *Shepard v. Holmes*, 185 Wn. App. 730, 739 (2014) (quoting RCW 19.86.120).  A cause of action under the CPA accrues when the plaintiff, through the exercise of due diligence, knew or should have known the basis for the cause of action.  *Id.* at 739-40.  Here, plaintiff's allegations that he filed a complaint with OMWBE to "expose Grady Excavating's fraudulent representations," resulting in "decertification of Grady Excavating on July 6, 2012," Complaint, ¶ 4.50, in combination

---

[10] Although plaintiff's CPA claim is apparently also against Peterson and Laird, plaintiff does not allege any specific unfair or deceptive acts or practices implemented by either Peterson or Laird.

with his August 20, 2012, complaint to the Federal Highway Administration, demonstrate that by at least August 20, 2012, plaintiff knew or should have known of the basis of his CPA claim. Despite this knowledge, however, plaintiff did not file this action until February 7, 2017, well after the four-year limitations period expired. Plaintiff's allegation that STP violated the CPA when it awarded the Initial Contract to Grady Excavating is therefore untimely.

In light of plaintiff's allegation that STP violated the CPA by awarding Grady Excavating other unspecified contracts, however, Complaint, ¶ 5.61, the Court is not yet satisfied, that plaintiff cannot allege timely violations of the CPA which state a plausible claim for relief. Accordingly, plaintiff's tenth cause of action is DISMISSED without prejudice.

## 11. Eleventh Cause of Action — Negligent Infliction of Emotional Distress (Against all Defendants)

To state a claim for negligent infliction of emotional distress under Washington law a plaintiff must allege: (1) duty; (2) breach; (3) proximate cause; (4) damage; and (5) objective symptomatology. *Kumar v. Gate Gourmet, Inc.*, 180 Wn.2d 481, 505 (2014). Plaintiff's allegations that defendants engaged in unspecified conduct causing "severe emotional distress," Complaint at ¶ 5.64, are too vague and conclusory to withstand a motion to dismiss. Plaintiff must do more—he must set forth factual allegations, not merely labels and conclusions, demonstrating a plausible claim for relief against each defendant whose conduct he alleges inflicted actionable emotional distress. *See Twombly*, 127 U.S. at 555. Accordingly, plaintiff's eleventh cause of action for negligent infliction of emotional distress is DISMISSED without prejudice.

## Conclusion

For the foregoing reasons, the STP Defendants' motion to dismiss, docket no. 21, and the State Defendants' joinder in that motion, docket no. 30, are GRANTED as follows.

Plaintiff's first cause of action for Title VI Discrimination is DISMISSED with prejudice.

Plaintiff's remaining claims are DISMISSED without prejudice and with leave to amend. Plaintiff may file an amended complaint consistent with the Court's ruling within thirty (30) days of the date of this Order. If plaintiff does not file an amended complaint within thirty days of the date of this Order, the Court will dismiss this case with prejudice.

IT IS SO ORDERED.

Dated this 13th day of June, 2017.

Thomas S. Zilly
United States District Judge