UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ELTON MASON,

           Plaintiff,

  v.

WASHINGTON STATE, et al.,

           Defendants.

CASE NO. C17-186 MJP

ORDER ON MOTIONS TO DISMISS

The above-entitled Court, having received and reviewed:

1. Defendants' Motions to Dismiss (Dkt. Nos. 41 and 43);
2. Plaintiff's Opposition to STP and State Defendants' Motions to Dismiss (Dkt. No. 47);
3. Defendants' Reply in Support of Motions to Dismiss (Dkt. Nos. 49 and 50);

and all relevant portions of the record, rules as follows:

IT IS ORDERED that the motions are GRANTED IN PART and DENIED IN PART.

IT IS ORDERED that all claims against Defendants Washington State, Washington State Department of Transportation, Office of Minority Women Business Enterprises, Lynn Peterson and Linea Laird are DISMISSED with prejudice.

IT IS FURTHER ORDERED that all claims against Defendant Seattle Tunnel Partners are DISMISSED with prejudice except the state and federal retaliation claims.

## Background

Plaintiff is an African-American male, sole owner of Washington State Trucking ("WST"), a trucking and excavating company certified as a Disadvantaged Business Enterprise ("DBE"). Dkt. No. 37, Amended Complaint ("AC") ¶¶ 1, 36. Defendant Washington State Department of Transportation ("WSDOT") is the state agency responsible for oversight of highway construction projects. AC ¶ 23. Defendant Lynn Peterson is the Secretary of WSDOT. AC ¶ 7. Defendant Office of Minority Women Business Enterprises ("OMWBE") is the state entity responsible for certifying as DBEs small businesses owned by minorities, women and other socially/economically disadvantaged individuals. AC ¶ 3.[1] Defendant Seattle Tunnel Partners ("STP") is the design-build contractor for the Alaskan Way Viaduct ("AVW") project. AC ¶¶ 18, 19.

The goal of the federally-funded AVW project is to build a new State Route 99 corridor through the City of Seattle. WSDOT, owner of the project, awarded the contract to STP. AC ¶19. That contract calls for a goal of 8% of contracted work awarded to DBEs. AC ¶21. Believing that both STP and the State of Washington were in violation of their responsibilities

---
[1] Hereinafter, these defendants are collectively referred to as "the State Defendants."

under the contract and the law, Plaintiff filed tort claims and Title VI complaints against Defendants as well as making informal complaints. AC ¶¶ 37-39.

The Federal Highway Administration ("FHWA") investigated Plaintiff's complaints and issued a report in November 2013, finding that both STP and WSDOT were in violation of federal regulations and the DBE program requirements. AC ¶¶ 44-45. Following the publication of that report, WSDOT issued a finding that STP was in breach of contract and needed to engage in commercially reasonable discussions with Plaintiff. AC ¶¶ 46-47.

Plaintiff alleges that, beginning in February of 2014, STP began a series of adverse actions against his company – including offering a "burdensome," 260-page contract for a reduced amount of work, conditioning Plaintiff's contract on the release of his claims against STP, refusing to consider bids for other jobs, and making false statements about Plaintiff – which Plaintiff claims were done in retaliation for the complaints he filed, and in an attempt to blacklist him from getting other work. AC ¶¶ 60-61.

In March 2014, WSDOT and the FHWA entered into a Conciliation Agreement, under which WSDOT agreed to more intensively oversee STP's efforts to meet the 8% DBE goal, hire a DBE Program Administrator and Coordinator, and take whatever steps were appropriate should it appear that STP had failed to address the DBE compliance issues which the FHWA report had identified. AC ¶¶ 94-98. Plaintiff alleges that WSDOT failed to meet its obligations under that agreement, and failed to either properly oversee or regulate STP's unlawful activities as described *supra*. AC ¶¶ 99-104. Plaintiff alleges that this was also done in retaliation for his "whistleblowing," and that WSDOT directly retaliated against him by spreading information about his equipment and work that was false to other agencies and businesses. AC ¶¶ 105, 106.

Plaintiff initially filed a complaint against Defendants alleging eleven separate causes of action under state and federal law. Dkt. No. 1. In response, Defendants filed motions to dismiss (Dkt. Nos. 21, 30), citing both statute of limitations issues and failure to state any claims upon which relief could be granted. The Court granted those motions, dismissing Plaintiff's claim for Title VI Discrimination with prejudice, but dismissing the remainder without prejudice and with leave to amend. Dkt. No. 33, Order at 21 ("TSZ Order"). Plaintiff then filed this amended complaint, alleging claims for Title VI retaliation; retaliation, blacklisting, and discrimination under the Washington Law Against Discrimination (RCW 49.60 et seq.; "WLAD"); breach of contract; and violations of § 1981 and § 1985. Defendants responded with a second round of motions to dismiss which are now before the Court.

## Discussion

Standard of review

In analyzing the parties' arguments under FRCP 12(b)(6), the Court must accept all facts alleged in the complaint as true, and draw all inferences in the light most favorable to the non-moving party. Barker v. Riverside County Office of Educ., 584 F.3d 821, 824 (9th Cir. 2009). To survive a motion to dismiss, Plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

"Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The plaintiff must plead facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Factual allegations "that are merely

consistent with a defendant's liability… stop[] short of the line between possibility and plausibility of entitlement to relief." Id.

Eleventh Amendment Immunity

The majority of the claims against the State of Washington, OMWBE, WSDOT and the individual State employees in their official capacities ("the State Defendants") fail on Eleventh Amendment immunity grounds. "[I]n the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment… This jurisdictional bar applies regardless of the nature of the relief sought." Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100-01 (1984)(citations omitted).

The State has not consented to suit in federal court on the claims concerning WLAD, any contracts or agreements between STP and WSDOT, or any violations of § 1981 or § 1985; Eleventh Amendment immunity bars all claims against the State Defendants except the Title VI retaliation cause of action. Plaintiff points to RCW 4.92.090, in which the State of Washington waives immunity for any and all acts of "tortious conduct," but, as the State Defendants point out, a waiver of immunity in state court does not operate as a waiver of federal court immunity. *See* Ronwin v. Shapiro, 657 F.2d 1071, 1073-74 (9th Cir. 1981); *also* McConnell v. Critchlow, 661 f.2d 116, 117 (9th Cir. 1981).

Plaintiff cites no authority to the contrary; the State Defendants are immune to all causes of action except the Title VI retaliation claim and all other claims against the State Defendants (including Defendants Peterson and Laird in their official capacities) will be dismissed with prejudice.

Title VI Retaliation (42 U.S.C. § 2000d)

In order to successfully state a claim for Title VI retaliation, Plaintiff must establish (1) that he engaged in a protected activity; (2) that Defendants took a "material adverse employment action" against him; and (3) that there is a "causal connection… between the protected activity and the adverse action." Peters v. Jenney, 327 F.3d 307, 320 (4th Cir. 2003).

Defendants do not dispute that Plaintiff engaged in a "protected activity." Regarding the second element, the State Defendants argue that none of the state agencies <u>employed</u> Plaintiff, therefore they cannot have taken a "material adverse *employment* action" against him. Plaintiff has no response to this argument; the Court finds it meritorious and further finds that Plainitff has conceded its merit by his failure to respond.[2]

Regarding the retaliation claims against Defendant STP: While this non-governmental defendant argues convincingly that much of Plaintiff's amended complaint is comprised of conclusory legal statements presented as factual allegations, it is nevertheless the conclusion of this Court that Plaintiff has alleged sufficient facts which, if proven, could plausibly support both a finding of "adverse employment action" and a legal theory that Plaintiff was retaliated against for complaining about the actions of STP; to wit:

1. In contract negotiations, STP allegedly reduced the scope of Plaintiff's work from an original bid of $415,800 to a contract that was ultimately worth only $184,470 to

---

[2] The Ninth Circuit holds that "a plaintiff who makes a claim… in his complaint, but fails to raise the issue in response to a defendant's motion to dismiss… has effectively abandoned his claim." Walsh v. Nevada Dept. of Natural Resources, 471 F.3d 1033, 1037 (9th Cir. 2006). *See also* TSZ Order at 14. ("[P]laintiff has entirely failed to respond to the arguments raised by defendants… and the Court construes this failure as an admission that the defendants' arguments have merit.")

1. Plaintiff; and that, in the process of reducing the scope of the contracted job, STP made it more difficult for Plaintiff to complete the contracted work profitably because he was not going to get paid to break up pieces of concrete and steel which are harder to haul away when intact. AC ¶¶ 61-90.

2. STP allegedly failed to pay Plaintiff's wages on time, creating problems with his payroll and insurance. AC ¶ 61. STP calls this "entirely speculative" in its briefing (Dkt. No. 41, Mtn at 10), but that term does not apply here. The timing of payments to Plaintiff is a strictly factual matter and the impact on Plaintiff's business a matter which is susceptible of factual proof. Defendant argues that the claim is not "explained" anywhere else in the complaint but Plaintiff is not required (at the pleading stage) to explain it any further. It is clear enough what he is alleging, and the allegation is entirely factual. If true, it could be seen as evidence of retaliation.

3. STP is alleged to have falsely accused Plaintiff of using trucks he did not own with VIN numbers filed off to hinder identification of the true owner, which cost Plaintiff lost business opportunities. AC ¶ 61. STP points out that the previous presiding judge dismissed these same allegations as insufficient to support a claim of defamation, citing (among other things) Plaintiff's failure to identify any *specific* contracts that were lost (TSZ Order at 16). In his amended complaint, Plaintiff does identify a specific contract which he alleges "STP… used their false accusations to justify refusing to award Plaintiffs [*sic*]… when Plaintiff was the lowest bidder." AC ¶¶ 126-128.

STP does not dispute the sufficiency of the allegations concerning the third element – causal connection -- and the Court finds that, accepting the facts of Plaintiff's whistleblowing

and allegations of differential treatment as true, there is a plausible and reasonable inference of a link between his protected activity and the adverse actions which he alleges. Nor does the Court accept STP's argument that the fact Plaintiff received a contract he bid on eliminates any possibility of retaliation. Given the facts as plead (STP was <u>ordered</u> to negotiate a contract with him, with WSDOT looking over its shoulder), it is a plausible legal theory that Defendant negotiated a punitive contract to simultaneously comply with FHWA's mandate and punish Plaintiff for blowing the whistle on the company's unsatisfactory discharge of its obligations.

Plaintiff has plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Finding that it is plausible that Plaintiff is entitled to relief for retaliation on the facts as alleged, the Court will deny STP's motion to dismiss that cause of action.

<u>Washington Law Against Discrimination ("WLAD") – RCW 49.60</u>

Plaintiff alleges three theories of recovery under this statute: racial discrimination, retaliation and blacklisting. As discussed *supra*, the State Defendants are immune from these claims. Each theory will be examined separately as it relates to Defendant STP.

*Racial discrimination*

Adequately pleading a claim for discrimination under WLAD requires allegations that Plaintiff was (1) a member of a protected class, (2) similarly situated to persons who were more favorably treated, and (3) that he was treated less favorably because of his race. <u>Marquis v. City of Spokane</u>, 130 Wn.2d 97, 113-14 (1996). Plaintiff is required to plead objective facts which create a reasonable and plausible inference of discriminatory intent.

1    Plaintiff has failed to do this. The contract that he claims he should have been awarded went to another DBE (AC ¶ 128); i.e., someone in his protected class of DBE's. Plaintiff's only other proof of discrimination consists of his claim that he was retaliated against when he complained (Dkt. No. 47, Response at 8), an allegation which is devoid of racial animus in and of itself, and for which he alleges no additional facts in support of his claim that the retaliation was racially motivated.

Washington courts analyzing WLAD claims often look to federal anti-discrimination law in interpreting and applying the state statute. Blackburn v. Dept. of Social and Health Svcs., 186 Wn.2d 250, 258 (2016). Federal case law requires the pleading of objective facts which support a reasonable inference of racial discrimination (*see, e.g.,* Gamble v. Pac. NW Regional Council of Carpenters, No. C14-455-RSM, 2016 WL 34424561 (W.D.Wash. May 28, 2015). Plaintiff's complaint contains neither direct objective evidence of racial bias (e.g., derogatory or offensive comments) nor circumstantial evidence from which it might be inferred.

*Retaliation*

STP cites a recent federal district court opinion that retaliation under WLAD requires an employer-employee relationship (*see* Owa v. Fred Meyer Stores, 2017 WL 897808 at *3 (W.D.Wash., Mar. 7, 2017), but there is Washington state law to the contrary; i.e., that the retaliation provisions of WLAD should be broadly construed to include independent contractors under their protection. Sambasivan v. Kadlec Med. Center 184 Wn.App. 567, 591-92 (2014). Finding Sambasivan more in keeping with the intent of the state statutory scheme, the Court will apply the state precedent.

Defendant again argues that the factual allegations supporting retaliation are "speculative and conclusory." For the reasons stated *supra* regarding Plaintiff's Title VI retaliation claim, the Court will deny Defendant's motion as regards the WLAD claim for retaliation.

*Blacklisting*

The WLAD provisions on blacklisting (found at RCW 49.60.030(1)(f)) apply only to "foreign government[s] and foreign person[s]." Plaintiff makes no response to STP's argument that the company is neither (nor does Plaintiff allege such in his complaint), yet he still insists without citation or rationale that the statute applies to Defendant. It is both puzzling and futile. Furthermore, the allegations that Plaintiff pleads in support of this claim were already found insufficient to support a blacklisting cause of action. (*See* TSZ Order at 17.) This portion of Plaintiff's claim will be dismissed with prejudice.

Breach of contract

This claim was dismissed in the previous order on Defendants' first motion to dismiss. Plaintiff simply re-alleges it in an identical (and unsatisfactory) fashion.

The contract which Plaintiff claims is being breached is not the contract he had with STP, but the contract between STP and WSDOT; i.e., the Conciliation Agreement which was executed following the FHWA findings that STP was in violation of federal regulations and its agreements on the AWV project. In other words, Plaintiff claims that he is a direct third-party beneficiary of the Conciliation Agreement.

Not only is Plaintiff's argument unsupported by case law (which requires, not an intent to "advance [Plaintiff's] interests, but an intent that the promisor shall assume a direct obligation to

[Plaintiff]"; *see* Lonsdale v. Chesterfield, 99 Wn.2d 353, 361 (1983)), but the argument has already been considered and rejected. (*See* TSZ Order at 17.)

Furthermore, there is a provision in the STP-WSDOT agreement that <u>specifically</u> disavows any intent to create third-party beneficiary rights for any subcontractors on the project. (*See* Dkt. No. 43, App'x at ¶ 8.3.8.2(a).) In the face of all evidence to the contrary, Plaintiff continues to insist that he is a direct third-party beneficiary of the Conciliation Agreement. It is not a meritorious position and the claim will be dismissed with prejudice.

There is also passing mention made in Plaintiff's amended complaint (and his briefing) that Defendants violated the state's Alternative Public Work Contracting Procedures (found at RCW 39.10 *et seq.*). But nowhere in his amended complaint or his responsive briefing does Plaintiff make any explanation of <u>how</u> any of his allegations constitute violations of those provisions of the state statute. The Court considers this portion of the claim abandoned in the face of STP's objections and Plaintiff's non-response.

<u>42 U.S.C. § 1981</u>

A claim under this federal statute is established through Plaintiff's allegations that (1) he operates a minority-owned firm; (2) that his bid on a contract "met the specifications of those competing for the contract;" (3) that his bid "was significantly more advantageous… than the bid actually awarded, whether in terms of price or some other relevant factor;" and (4) that another contractor was selected. <u>T & S Serv. Assocs. v. Crenson</u>, 666 F.2d 722, 725 (1st Cir. 1981).

Plaintiff's allegations against STP are a re-hash of the allegations in his original complaint, allegations previously found to be "threadbare recitals of the elements of a cause of

action, supported only by conclusory statements" (TSZ Order at 11-12; e.g., Plaintiff's unsupported allegation that his bid was "the best value") and insufficient to state a viable claim. This remains the case.

Plaintiff's amended allegations only concern OMWBE (AC ¶¶ 207-216); that agency, as previously established, is entitled to Eleventh Amendment immunity as regards these claims and they will be dismissed with prejudice.

42 U.S.C. § 1985

A successful claim under this act is established by alleging

(1) a conspiracy; (2) for the purpose of depriving… any person… of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992)(*citing* United Brotherhood of Carpenters and Joiners of America v. Scott, 463 U.S. 825, 828-29 (1983)).

As alleged in Plaintiff's original complaint, this claim was dismissed for two reasons: (1) Plaintiff's failure to respond to STP's arguments in its first motion to dismiss and (2) the allegations of a § 1985 conspiracy in Plaintiff's complaint were "entirely conclusory and without factual support." (TSZ Order at 14.)

In response to STP's renewed motion to dismiss, Plaintiff states that "[p]ursuant to Judge Zilly's Order, [he] alleges facts supporting injury to his reputation in the contracting community." (Response at 11.) But (1) Judge Zilly's dismissal of his conspiracy claim said nothing about failure to allege facts supporting the injury to his reputation and (2) the conspiracy

claim itself said nothing about this sort of injury. It is a non-response to the problems identified in the earlier order.

The conspiracy claim does allege that the parties conspired to refuse to grant him contracts (AC ¶¶ 224, 225) and Plaintiff's response does point to where in the amended complaint he specifically mentions instances of lost contracts. One of the specific instances does contain allegations that Plaintiff was the lowest bidder on a contract which was awarded to another DBE. (AC ¶¶ 127, 128.) While the "lowest bidder" allegation is conclusory, Plaintiff also alleges that STP failed to grant him access to the bidding information when he requested it, so the Court will not fault him for the lack of specificity.

However, Plaintiff completely omits any specific factual allegations regarding "an act in furtherance of the conspiracy;" i.e., some specifics to support his claim that Defendants made an agreement among themselves to deprive him of his rights. In other words, he has failed to allege a conspiracy. Given that he has already been given an opportunity to correct this exact problem, dismissal with prejudice is appropriate.

Injunctive/Declaratory Relief

In both the caption of the Amended Complaint and in the prayer for relief, Plaintiff requests declaratory and injunctive relief. (AC § VI, ¶¶ C, D.) The State Defendants argue that declaratory relief is only proper only when "the facts alleged… show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941). Further,

> A case or controversy exists justifying declaratory relief only when the challenged activity… is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the… parties…. [A] declaratory judgment merely adjudicating past violations of federal law – as opposed to continuing or future violations of federal law – is not an appropriate exercise of federal jurisdiction.

Bayer v. Neiman Marcus Group, 861 F.3d 853, 864 (9th Cir. 2017).

Additionally, "the purpose of injunctive relief is to prevent future harm." Geier v. M-Qube Inc., 314 F.R.D. 692, 699 (W.D. Wash. 2016). Plaintiff's amended complaint contains no allegations of future harm arising out of the incidents of which he complains. He has alleged no current contractual relationship with any of the defendants. "A plaintiff who cannot reasonably be expected to benefit from prospective relief ordered against the defendant has no claim for an injunction." Bayer, *supra* at 864.

Finally, Plaintiff made no response to any of these arguments. His claims to equitable relief will be dismissed with prejudice.

Claims against Linea Laird and Lynn Petersen in their individual capacities

Because of Plaintiff's poorly-worded amended complaint, it is unclear from the face of that pleading whether these two state employees are being sued in their individual (as well as their official) capacities.

Plaintiff indicates in his response that all claims against Linea Laird are dismissed. (Response at 11.) He does state, though, that he "is suing Lynn Peterson [Secretary of WSDOT] in her individual capacity." (Id. at 4.) However, as the State Defendants point out, the amended complaint contains no allegations of any wrongdoing on the part of Defendant Peterson. She is

mentioned exactly twice in the Amended Complaint: once when she is identified as the Secretary of WSDOT (AC at ¶ 7), and again when she is identified as the official who executed the Conciliation Agreement. (AC at ¶ 96.) All of Plaintiff's allegations of malfeasance thereafter only mention "WSDOT," with no allegations that Peterson herself did anything illegal or improper.

The very case cited by Plaintiff in support of his suit against Peterson as an individual contains language which warns about "masked official capacity suits:"

> In any suit against [individuals who serve in an official capacity], we must be sensitive to whether "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the [sovereign] from acting, or to compel it to act."

Maxwell v. County of San Diego, 708 F.3d 1075, 1088 (9th Cir. 2013)(*cited* in Pistor v. Garcia, 791 F.3d 1104, 1113 (9th Cir. 2015). This is an apt description of the state of Plaintiff's pleadings. All of his allegations are against WSDOT generally and he seeks (through his request for injunctive and declaratory relief) to restrain or compel *the agency* to act. There are no allegations suggesting that Peterson directed the actions of the agency in inappropriate or illegal ways or was acting *ultra vires* to achieve some personal goal or agenda; suing her in her individual capacity is simply a way to get around the sovereign immunity which WSDOT enjoys by virtue of the Eleventh Amendment.

The claims against Defendant Peterson in her individual capacity will be dismissed with prejudice.

**Conclusion**

While Plaintiff's amended complaint is far from a model of proper pleading, the Court finds that he has alleged sufficient facts which, viewed in the light most favorable to him, plausibly and reasonably raise the inference that he entitled to relief for retaliation under both the federal and state statutory schemes. He will permitted to proceed on that claim alone. The rest of his claims – which he has been given a chance to amend satisfactorily and failed -- will be dismissed with prejudice. The State Defendants will be dismissed from the complaint entirely.

The clerk is ordered to provide copies of this order to all counsel.

Dated: December 5, 2017.

_____
Marsha J. Pechman
United States District Judge